**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TODD GROOM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:16-cv-683-MHT-DAB** |
| | ) | |
| **ARMY FLEET SUPPORT, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# REPORT AND RECOMMENDATION

Plaintiff Todd Groom, who has a right leg prosthesis following an amputation in 1989, alleges he was wrongfully terminated by his former employer, Defendant Army Fleet Support, LLC, in violation of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Family Medical Leave Act, ("FMLA"), 29 U.S.C. § 2601 *et seq*. (Doc. 1). Before the court is Army Fleet Support, LLC's Motion for Summary Judgment. (Doc. 31). The matter has been fully briefed. *See* (Docs. 32–34, 37–40). For the reasons stated herein, it is the **RECOMMENDATION** of the undersigned that the motion for summary judgment be **DENIED**.

## I. JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(4). The parties do not contest personal jurisdiction or venue, and the court

finds sufficient information of record to support both. *See* 28 U.S.C. § 1391. On January 5, 2017, the above-styled matter was referred to the undersigned for recommendation on all pretrial matters by United States District Judge Myron H. Thompson. (Doc. 12); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving

party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1263 (quoting *Anderson*, 477 U.S. at 251–52).

## III. FACTUAL BACKGROUND

Todd Groom ("Groom") has been a right leg amputee since 1989. (Doc. 37-2 at 13:30–14:17). He began working for Army Fleet Support, LLC ("AFS") as a mechanic in 2008. *Id.* at 6:16–7:13. While working for AFS, Groom used a prosthetic device on his right leg. *Id.* at 16:14–20. In late 2014, Groom's prosthesis wore out, and it was recommended he replace it. *Id.* at 24:1–13. The new prosthesis caused him to develop blisters where the stump of his leg met the device. *Id.* at 24:22–25:10. It took one to three weeks for the blisters to heal depending on if they became infected. *Id.* at 42:3–12. Additionally, Groom experienced more phantom right leg pain since getting the new prosthesis. *Id.* at 25:11–26:1. In November 2014 Groom applied for and went on short-term disability while waiting on his

wound to heal. *Id.* at 27:7–29:20; 41:3–6. AFS records show Groom was on short-term disability from November 24, 2014, until January 19, 2015. (Doc. 33-1 at 36–37). Within a week or so of returning to work from short-term disability, Groom began having the same problems with his leg. *Id.* at 40:8–21.

Groom applied for FMLA leave on February 4, 2015, which was approved February 10, 2015. (Doc. 33-1 at 28–29). In conjunction with his request for leave, Groom provided medical certification from his prosthetist, Willis Smitherman, *see id.* at 23–26, but he did not review the certification. (Doc. 37-1, ¶2). Groom knew he could take up to 12 weeks per year, but was unaware of any restriction as to how much time he could take off at any given time. *Id.* The certification by Smitherman stated that Groom "may experience occasional temporary conditions that may require removing the prosthesis for several days for skin conditions." (Doc. 33-1 at 25). According to Smitherman, the frequency of the flare-ups and related incapacity was expected to be one to five days every three months. *Id.*

According to AFS records, Groom used 288 hours of FMLA leave from May 2014 until May 2015. *Id.* at 31. Groom was absent from work five times in February 2015, but only one of the days provided a reason of "Family Medical Leave." *Id.* at 38. Groom was absent fifteen days in March 2015 for "Family Medical Leave." *Id.* at 38. In April 2015, Groom was out fourteen days due to "Family Medical Leave," four times for "Employee sick," and two days for "Personal." *Id.* Groom had six

absences in May identified as "Family Medical Leave," and thereafter time taken off was noted as "Unauthorized absence." *Id.* at 38–39. All of Groom's absences in 2015 where he called in requesting FMLA leave was due to blisters on his leg, including the dates of May 11, 12, and 13, *see* (Doc. 37-1, ¶2), which were listed by AFS as "unauthorized absences." (Doc. 33-1 at 39).

On a Thursday in early May 2015, Liz Neering in AFS human resources told Groom that he was running out of leave time under FMLA. (Docs. 37-1,¶3; 37-2 at 53:12–18). Neering never said he exceeded his allotted absences, but rather only told him that he was running out of FMLA. (Doc. 37-1,¶3). Groom told Neering he thought he had four weeks of FMLA time left. *Id.*; *see also* (Doc. 37-2 at 53:12–18). Neering suggested he go back on disability, but he felt he would be healed up by Monday, May 11, so he told her he did not need to go on short-term disability. (Docs. 37-1, ¶3; 37-2 at 51:1–19, 59:18–61:18, 62:5–63:9). According to Groom, Neering, nor anyone else, ever told him he needed another medical certification or any updated medical information prior to termination. (Doc. 37-1, ¶¶3, 6). Penny Poole, manager of labor relations and benefits for AFS, testified that Neering did not direct Groom to submit new FMLA medical certification. (Doc. 37-3 at 53:13–19).

On Monday May 11 Groom did not return to work because he developed another blister on his leg over the weekend. (Docs. 37-1, ¶4; 37-2 at 126:6–18). On each day May 11 through May 13, Groom advised his supervisor, via text message,

that he would be missing work due to an FMLA issue. (Doc. 37-1, ¶4). On May 14, one of his supervisors sent Groom a text that he needed to contact the union shop steward because Groom could not be put in for FMLA leave effective May 13. *Id.*; *see also* (Doc. 37-2 at 58:19–59:5). Groom called and spoke with a union representative who told Groom he needed to attend a meeting. (Docs. 37-1, ¶4; 37-2 at 59:6–17). Groom told him he was laid up with a blister and would let him know when he would be better to attend a meeting. (Doc. 37-1, ¶4).

AFS sent Groom a certified letter on May 14, 2015, terminating Groom for job abandonment due to three consecutive unauthorized absences on May 11, 12, and 13. (Doc. 33-1 at 60). On May 18, Groom's blister was better and he sent a text message to the shop steward to set up the union meeting. (Doc. 37-1, ¶6). On May 20, 2015, a union meeting was held with human resources staff, Groom, and Groom's representatives. *Id.* Groom told AFS at that time that he missed work on those three days due to another blister developing on his leg over the weekend. *Id.* He offered to explain the blisters and show pictures of them, but human resources did not want to hear about it. *Id*. Groom states no one asked him why he did not return to work on Friday May 8, but if they had, he would have explained his blister had not fully healed. *Id.*

Groom states that AFS does not have a consistent policy about intermittent leave, and it has happened previously that an employee on intermittent leave missed

more work because of it than was stated on the medical certification. (Doc. 37-4 at 19:14–20:23). During the investigation conducted by the Equal Employment Opportunity Commission (EEOC), AFS identified two employees who were given last chance agreements with suspension, rather than being terminated, for substantially similar offenses and two employees who were terminated. (Doc. 37-4 at 30).

As an employee of AFS, Groom was a member of the International Association of Machinists and Aerospace Workers ("IAMW") union and covered by the Collective Bargaining Agreement and corresponding work rules between AFS and IAMW. (Doc. 37-2 at 9:13–23). Work Rule 39 provides that "[e]mployees will not have unauthorized absences of three consecutive working days." (Doc. 33-1 at 71). The penalty for violation of Rule 39 is discharge. *Id.*

## IV. PLAINTIFF'S CLAIMS

Groom filed a two-count complaint against AFS alleging violations under the ADA and the FMLA. He claims he was terminated for taking leave from work for his disability that was covered under AFS's policies and the FMLA. In count one, Groom asserts his rights were violated under the ADA because AFS failed to provide a reasonable accommodation for his disability in not allowing him absences and that resulted in his termination. (Doc. 1, ¶50). Additionally, he asserts he was terminated

because of his disability and retaliated against for seeking a reasonable accommodation for his disability. *Id.*

In count two, Groom alleges AFS violated the FMLA when it interfered with his FMLA rights by terminating him for absences that were covered by the FMLA and retaliated against him by terminating him for availing himself of his FMLA rights. *Id.*, ¶ 62.

## V. DEFENDANT'S MOTION

In its motion for summary judgment, AFS argues that Groom's ADA claim fails because he was not a "qualified" individual for purposes of the ADA. (Doc. 32 at 7–9). AFS contends Groom never made a reasonable accommodation request, but instead sought an indefinite leave of absence without any indication of when he would return to work. *Id.*

Regarding the FMLA claim, AFS argues that Groom's absences were not covered by the FMLA because his absences on May 11, 12, and 13 were beyond the certification provided by Groom's prosthetist. *Id.* at 9–13. Additionally, it contends that it did not terminate Groom because he requested FMLA leave, but rather due to his abuse of his FMLA leave. *Id.* at 13–15. Similarly, AFS argues Groom cannot prevail on his retaliation claim because it has demonstrated a non-retaliatory basis for his termination, namely Groom's violation of the attendance policy due to three consecutive workday unauthorized absences. *Id.* at 15–17.

## VI. ANALYSIS

### *A. ADA Claim*

Groom has asserted that he was discriminated against in violation of the ADA. In order to establish a *prima facie* case of discrimination under the ADA and survive summary judgment, Groom must demonstrate that: (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability. *Mullins v Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Gordon v. E.L. Hamm & Associates, Inc*., 100 F.3d 907, 910 (11th Cir. 1996). He must also demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Gordon*, 100 F.3d at 910-11. A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of an individual; or being regarded as having such impairment. 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* §

12102(2). Here, it is undisputed that Groom suffers from a disability, within the meaning of the ADA in that his condition substantially limits him from the major life activities of walking and standing. It is also established that AFS was aware of Groom's disability, and considered him to be disabled. Thus, Groom has met the first prong of his *prima facie* case.

In its motion, AFS argues Groom fails to satisfy the second element that he is a "qualified" individual who, with or without reasonable accommodation, could perform the essential functions of his job. AFS submits that an accommodation is unreasonable if it would impose an undue hardship on the operation of the employer's program. *See* 45 C.F.R. § 84.12(a). "[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (citation omitted).

The regulations define "reasonable accommodation" to include "part-time or modified work schedules." 45 C.F.R. § 84.12(b). This Circuit has recognized that while a request for indefinite leave may not be reasonable, a "leave of absence might be a reasonable accommodation in some cases." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). AFS contends that Groom essentially sought an indefinite

leave of absence and therefore he could not show that he was able to perform the essential functions of his job. On Monday May 11, Groom was unable to work due to a blister that had developed over the weekend. He texted his supervisor, as he had done in the past, requesting FMLA leave. On Tuesday May 12, Groom did not appear for work and texted his supervisor that he was taking an "FML" day. On Wednesday May 13, he again texted stating he was taking an "FML" day. AFS treated these absences as "unauthorized," and on Thursday, May 14, Groom was terminated. When Groom appeared at the May 20 union meeting, he announced he was ready and able to return to work. Thus, contrary to AFS's arguments, a jury could conclude that Groom was not looking for an indefinite leave of absence, and would be capable of performing the essential functions of his job with a reasonable accommodation of a leave of absence, particularly where, as here, he had not yet utilized the full 12 workweeks of FMLA leave. Indeed, prior to his termination, he was under the impression he had four weeks of leave time available.

AFS argues that Groom's statement at the May 20 meeting was after his termination, and therefore is meaningless. To the extent the meeting was an opportunity for Groom to present a basis for overturning his termination, however, the court finds his statement at the meeting potentially relevant. A review of the attendance records appears to show Groom had not yet exhausted his 12 workweeks of FMLA leave as of the date of his termination on May 14, 2015. *See* (Doc. 33-1

at 38–39). If he still had days left to take, it seems AFS would have some burden to make sure the circumstances are clarified before firing or failing to reverse the firing. AFS contends Groom was told in early May that further absences would not be authorized FMLA leave. Groom states, however, that he was never told he exceeded his allotted absences or that he needed another medical certification or any updated medical information. Given the ambiguity and uncertainty about what documentation or other certification was required for Groom to take additional leave and whether that was communicated to Groom, the court finds disputed issues of material fact preclude summary judgment in AFS's favor on Groom's ADA claim.[1]

*B. FMLA Claim*

Groom alleges that AFS interfered with, and terminated him for asserting, his rights under the FMLA. The FMLA grants eligible employees the right to take "12 workweeks of leave during any 12–month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Following this period of leave, the employee has the right to be "restored by the employer to the position of employment held by the employee [or a comparable position] when the leave commenced." *Id.*

[1] Groom's ADA count also included a claim that AFS retaliated against him in violation of the ADA by terminating him for seeking a reasonable accommodation for his disability. This claim is not a basis for AFS's summary judgment motion, and thus the court need not address it here.

§ 2614(a)(1). The leave may be taken as a block or, when medically necessary, intermittently. *Id.* § 2612(b)(1).

"The FMLA recognizes two types of claims for alleged violations of these provisions: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled, and retaliation claims, in which employers discharge employees for exercising their FMLA right to leave." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000) (internal citations omitted). Groom asserts both types of FMLA claims here.

**1. Interference**

"[T]o state a claim that his employer has interfered with a substantive FMLA right, a plaintiff need only demonstrate that he was entitled to but denied the right. He does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). AFS argues that Groom's FMLA interference claim fails because his May 11, 12, and 13 absences were unauthorized and not covered by his FMLA certification. (Doc. 32 at 10–13). Specifically, AFS contends that Groom was only granted intermittent leave per his medical certification. Under the FMLA, an employer may require an employee to support his leave request with a health care provider's certification. *See* 29 U.S.C. § 2613. If such certification is necessary, an employer must give an employee notice

for each time certification is required. *Id*. § 825.305(a). The certification provided by Groom's prosthetist stated Groom's duration of incapacity due to flare-ups would be one to five days every three months. (Doc. 33-1 at 25). AFS urges Groom's absences in mid-May exceeded the time allowed by the prosthetist's certification.

The regulations require an "employer [to] advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). The employer should give the employee the opportunity to cure the deficiency. *Id.* Under the regulations, intermittent leave "may include leave of periods from an hour or more to several weeks." 29 C.F.R. § 825.308(c). As previously discussed, it is unclear as to what was communicated to Groom regarding additional certification he was required to provide. And to the extent Groom had FMLA time remaining, a jury could conclude he was entitled to, but denied, his FMLA rights.

AFS additionally argues that Groom was terminated because he was abusing his FMLA based on the amount of leave he took compared to the amount stated he needed in his medical certification and the fact Groom said he could, but failed, to return to work on May 11. (Doc. 32 at 13–15). As discussed by Groom in his response, there is no testimony or documentation to support AFS's allegation of "abuse." On this record, the court finds these matters better left for the factfinder,

and thus AFS's motion for summary judgment on Groom's FMLA interference claim is due to be denied.

**2. Retaliation**

Groom argues AFS retaliated against him by terminating him when he sought to avail himself of his FMLA rights. In the absence of direct evidence of discrimination on the part of the employer, courts apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for evaluating retaliatory discharge claims. *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). Under the *McDonnell Douglas* analysis, the plaintiff carries the initial burden of establishing a *prima facie* case. 411 U.S. at 802. A plaintiff establishes a *prima facie* case by demonstrating that "(1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision." *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000). Once the initial burden is met, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action.]" *McDonnell Douglas*, 411 U.S. at 802. Plaintiff is then afforded an opportunity to show the employer's stated reason is pretextual. *Id.* at 804.

AFS's motion does not challenge Groom's ability to establish a *prima facie* case, but rather maintains that, regardless if Groom satisfies his initial burden, it has presented a legitimate non-retaliatory motive for the adverse employment decision. (Doc. 32 at 16). Specifically, AFS submits that Groom was terminated for violating Work Rule 39, which states that employees will not have unauthorized absences for three consecutive days. *Id.* In turn, Groom claims AFS's stated reason for his termination was pretextual. (Doc. 38 at 17).

In evaluating whether AFS's actions were merely a pretext, "[t]he court must, considering all the evidence, ascertain whether [Groom] has cast doubt on [AFS's] proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that [AFS's] proffered 'legitimate reasons were not what actually motivated its conduct.'" *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quoting *Cooper–Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). Groom argues that it has shown that, in a light most favorable to him, his absences on May 11, 12, and 13 were covered by the FMLA. This fact, coupled with the two other employees who had similar intermittent leave situations and were given less severe punishment than Groom, evidences pretext such that a jury could conclude AFS's stated reason for discharging Groom was not what actually motived its termination decision. For these reasons, it is recommended that AFS's motion for summary judgment on this issue be denied.

## VII. CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons stated, it is **RECOMMENDED** that Army Fleet Support, LLC's Motion for Summary Judgment (Doc. 31) be **DENIED**.

## VIII. NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Accordingly, it is hereby **ORDERED** that any objections to the Report and Recommendation shall be filed on or before **May 2, 2018**. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; see also 28 U.S.C. § 636(b)(1).

**Respectfully Recommended** this 18th day of April, 2018.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE